#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | CASE NO. 24-CR-26-UNA |
| SHABAZZ BARLOW, | : | |
| | : | |
| Defendant | : | |

### THE UNITED STATES' MEMORANDUM IN SUPPORT OF
### MOTIONS TO DETAIN THE DEFENDANTS

For the reasons outlined below, this Honorable Court should grant the United States' Motion for Detention, D.I. 7, and detain the Defendant pending trial as he is both a danger to the community and a flight risk.

**I.   PROCEDURAL HISTORY**

On February 15, 2024, a federal grand jury sitting in the District of Delaware returned a three-count Indictment against the Defendant for firearm violations. More specifically, the Indictment alleges violations of Count One – Conspiracy to Traffic Firearms, in violation of 18 U.S.C. §§ 933(a)(1), (a)(3), and (b); Count Two – Trafficking of Firearms, in violation of 18 U.S.C. §§ 933(a)(1), (a)(3), and (b); and Count Three – Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

On February 20, 2024, the Defendant appeared in front of the Honorable Christopher J. Burke for an initial appearance on the Indictment. The United States moved to detain the Defendant, the Court temporarily detained the Defendant, and

1

scheduled a Detention Hearing. This memorandum in support of detention now follows.

## II. THE DEFENDANT MUST BE DETAINED PENDING TRIAL

The Bail Reform Act requires courts to detain a defendant pending trial when "no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); see also, *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). To justify pretrial detention, the United States must establish risk of flight by a "preponderance of the evidence," and dangerousness "by clear and convincing evidence." See *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986); *United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986).

The Court must consider four factors to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community: (1) the nature and circumstances of the crime charged, including whether it involves a firearm or a controlled substance offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that defendant's release would pose. 18 U.S.C. § 3142(g).

On balance, the factors unanimously weigh in favor of the detention of the Defendant, and he must be detained pending trial.

### a. The Nature and Circumstances of the Defendants' Crimes Demand Pre-Trial Detention

*First*, the nature and circumstances of the offense support that the Defendant is a danger to the community. Section 3142 instructs the Court to consider whether the offense charged involves a controlled substance or a firearm. 18 U.S.C. § 3142(g)(1). Here, the Defendant, a convicted felon, sold an AR-15 to an undercover officer, offered more, and openly bragged about having others straw purchase firearms on his behalf.

On February 7, 2023, the Dover Police recovered a Glock 19 handgun, serial number BPEC388, during a traffic stop of a juvenile. A trace revealed that the Glock 19 was purchased by Reginald Hovington, from Spicher Custom, LCC in Marydel, Delaware. Dover PD later charged Hovington in the state of Delaware for making a false statement in purchasing the firearm, he pled guilty, and was sentenced to probation. Barlow was also charged, pled guilty, and was sentenced to probation. The investigation of Barlow's Facebook account showed that Barlow requested Hovington purchase him the firearm. See Exhibit 1:



3

On March 15, 2023, a Delaware State Police detective ("the UC"), acting in an undercover capacity, contacted Associate-1 to purchase an illegal firearm. During their phone call conversations, the UC advised Associate-1 that he was "not allowed" – or could not possess – to have firearms. Associate-1 advised that he had an AR-15 style rifle for sale and stated he wanted $600.00 USC in exchange. They agreed to complete the sale in Dover, Delaware.

After the UC arrived at the meet location, the UC received a phone call from a phone number ending in -8031, which later turned out to be Barlow, not Associate-1, asking the UC's location and the color, make, and model of the UC vehicle. The UC then observed a black in color, GMC SUV arrive in the area. After the UC shared the information, the black SUV parked near the UC vehicle.

Barlow then exited the driver's seat of the black GMC SUV and reached into the trunk. Barlow retrieved a large brown box and walked towards the UC vehicle. Upon arrival, Barlow opened the rear passenger door and placed the large brown box inside.

Simultaneously, Associate-2 exited the black SUV and approached f the driver's door of the UC vehicle. After opening the rear passenger door, Barlow opened the brown box and the UC observed the AR-15 inside. After a few moments, the UC gave the recorded United States Currency to Associate-2, who counted the money and collected the money for Barlow.

After the transaction, Barlow advised that he had access to more firearms and asked if the UC was interested in purchasing any other guns, specifically AR style

4

rifles and handguns. The UC and Barlow agreed to stay in contact to engage in further transactions. After the transaction, Barlow returned to black GMC SUV and left the area.

After the transaction, the firearm was swabbed for fingerprints and DNA, which were negative. The firearm was a black in color, New Frontier .556 AR-15 rifle with serial number NLV77505 containing a foldable stock. A NCIC inquiry on the weapon revealed that it had not been reported stolen. See Exhibit 2 and 3 below:





Accordingly, the nature and circumstances of the offense support that the Defendant is a danger to the community, and, therefore, this factor weighs in favor of detention.

### b. *The Weight of the Evidence Against the Defendants is Strong and Warrants Detention*

*Second*, the weight of the evidence supports detaining the Defendant. Here, the evidence against the Defendant is strong. During the undercover transaction, the entirety of the sale was recorded. As mentioned previously, Barlow, via the 8031-phone number, placed a call to the UC. Barlow previously provided this number to his state probation. Further, after he approached the vehicle, the recording captures an echo from Barlow's device as the phone line was still open and was now too close to the recording device. Further, the UC's recording device squarely captured and identified Barlow as the person who delivered the AR-15. See Exhibit 4:



Also, as mentioned, Barlow delivered the AR-15 in a large, brown cardboard box. Prior to delivering the AR-15, video surveillance from the Whatcoat Apartments

in Dover, Delaware captured Barlow entering the building empty-handed and leaving with the same large, brown cardboard box delivered to the UC.

See Exhibit 5: **2:51 p.m.** – Barlow enters the Whatcoat Apartments:



See Exhibit 6: **2:55 p.m.** – Barlow exits the Whatcoat Apartments with a large cardboard box (which later contained the AR-15):



Further, in Barlow's Facebook search warrant, a day prior to the sale, Barlow sent a photograph of the same rifle that was purchased by the UC on March 15, 2023.

7

The gun depicted in the photo has the same distinctive red marks on the butt of the gun. See Exhibit 7:



In short, the evidence against the Defendant is strong. Further, it shows that he is a danger to the Delaware community, and therefore should be detained pending trial.

c. **History and Characteristics**

*Third*, the Defendant's history and characteristics also weigh in favor of detention. In assessing whether this factor weighs in favor of detention, the statute identifies eleven nonexclusive areas for the court's consideration. Those areas are (a) the Defendant's character; (b) his physical and mental state; (c) his family ties; (d) his employment; (e) his financial resources; (f) the length of residence in the community/community ties; (g) past conduct; (h) history relating to drug or alcohol

8

abuse; (i) criminal history; (j) record concerning appearance at court proceedings; and (k) whether, at the time of the current offense or arrest, the person was on probation, parole, or other release pending trial, sentencing appeal, or completion of a sentence. 18 U.S.C. § 3142(g)(3).

While the Defendant has ties to the community, his criminal history indicates that is a danger and a flight risk. Prior to the instant matter, the Defendant received two prior drug convictions and two prior firearms convictions. This, combined with the new instant offense, shows he's a danger to the community.

Further, the Defendant has a history of failure to appear and probation violations, which indicate that he is a flight risk. Furthermore, at the time of the offense, the Defendant was on probation with the state of Delaware. All told, there is simply insufficient evidence to show that he is not dangerous and/or likely to flee.

### d. Seriousness of the Crime

*Finally*, the nature and seriousness of the crime weighs in favor of detention. As detailed above, the Defendant sought to engage in a conspiracy to straw purchases and then the resale of weapons, despite being a felon. Illicit transactions of firearms undermine our laws and risks the lives of others. For example, studies of crime gun recoveries in Chicago, New York City, and Boston show that approximately 87% of the firearms used in crime in these cities were trafficked from other states. In other words, criminals, like the Defendant, seek out and exploit loopholes, such as straw purchases or states with weaker laws, to find firearms to resell on the illicit market.

Here, the Defendant openly bragged about illegally acquiring guns and then reselling them. For example, and most damningly, ATF recovered a conversation between Barlow and Facebook account "Nick Lambert" from March 17, 2022. In the conversation, Barlow advised "Nick Lambert" how he obtained his firearms. Barlow stated, "I be having somebody grab for me imma (I am a) felon[.]"  See Exhibit 8:

> **Author** Nick Lambert (Facebook: 100000920964206)
>   **Sent** 2022-03-17 03:59:37 UTC
>   **Body** Where you grab yours at
>
> **Author** Shabazz Barlow (Facebook: 100000580116107)
>   **Sent** 2022-03-17 04:00:09 UTC
>   **Body** I be having sombody grab for me imma felon
>
> **Author** Shabazz Barlow (Facebook: 100000580116107)
>   **Sent** 2022-03-17 04:00:31 UTC
>   **Body** But down marydel bro on strauss its a red barn dat nigga got everything in there
>
> **Author** Nick Lambert (Facebook: 100000920964206)
>   **Sent** 2022-03-17 04:00:56 UTC
>   **Body** I'm might have to slide fr
>
> **Author** Shabazz Barlow (Facebook: 100000580116107)
>   **Sent** 2022-03-17 04:00:57 UTC
>   **Body** I just grab dat yesterday came with the beam and all only paid 320

[Space Intentionally Left Blank]

///

## III. **CONCLUSION**

The Defendant cannot overcome the danger to the community and a risk of flight he presents as the factors outlined in 18 U.S.C. § 3142(f) weigh heavily in favor of detention pending trial. As a result, the Court should grant the United States' Motions for Detention.

For the foregoing reasons, the Court should grant the United States' Motion for Detention and order the Defendants detained pending trial.

          Respectfully submitted,

          DAVID C. WEISS
          United States Attorney

By:   */s/ Kevin P. Pierce*
       Kevin P. Pierce
       Assistant United States Attorney